*NO. 15-55779*

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

**SOLID LANDINGS BEHAVIORAL HEALTH, INC.; SURE HAVEN in its own name and dba SOLID ROCK RECOVERY; FPS LLC; STEPHEN FENNELLY; ELIZABETH PERRY; AND JOHN DOE,**

*Plaintiffs and Appellants*

**v.**

**CITY OF COSTA MESA,**

*Defendant and Appellee*

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### (8:14-CV-01338-JVS-JCG)

---

## APPELLEE CITY OF COSTA MESA'S OPPOSITION TO SECOND

## MOTION FOR PRELIMINARY INJUNCTION PENDING REVIEW

### [FRAP 8]

**Urgent Motion - Relief required before November 20, 2015**

James Touchstone (SBN 184584)
G. Ross Trindle, III (SBN 228654)
JONES & MAYER
3777 No. Harbor Boulevard
Fullerton, CA 92835
(714) 446-1400/(714) 446-1448/fax

Attorneys for Appellee,
City of Costa Mesa

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS (C.R.C.

## RULE 8.208)

The following entities or persons have either (1) an ownership interest of ten percent or more in the party or parties filing this certificate (C.R.C., Rule 8.208(e)(1), or (2) a financial interest or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves. (C.R.C., Rule 8.208(e)(2)):

There are no interested entities or person to list in this certificate other than the parties.

Dated: October 5, 2015          JONES & MAYER

*/s/ G. Ross Trindle, III*
James Touchstone
Tarquin Preziozi
G. Ross Trindle, III
Attorneys for Petitioner,
City of Costa Mesa

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................3

ARGUMENT ....................................................................................5

I.    STANDARD ON URGENT MOTION FOR
PRELIMINARY INJUNCTION PENDING
APPEAL ..................................................................................5

II.    THE MOTION SHOULD BE DENIED FOR
FAILURE TO COMPLY WITH THE FEDERAL
RULES OF APPELLATE PROCEDURE ....................................7

    A.    Appellants Failed to Comply with Rule
8(a)(2)(B)(I) and Rule 27(a)(2)(B)(I).................................7

III.    APPELLANTS' MOTION SHOULD BE DENIED
BECAUSE THE ORDINANCE IS VALID ON ITS
FACE, AND THEY HAVE NOT SHOWN IMMINENT,
IRREPARABLE HARM ..........................................................8

    A.    No Immediate, Irreparable Harm Exists ............................8

    B.    Appellants Are Not Likely to Prevail on the
Merits as the Ordinance is Valid on its Face.......................9

        1.    The Ordinance...................................................9

        2.    The Fair Housing Amendments Act ........................11

            a.    Disparate treatment.......................12

            b.    Reasonable accommodation ...........21

CONCLUSION.................................................................................22

CERTIFICATE OF SERVICE ..............................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arlington Heights v. Metro. Housing Corp.*,
    429 U.S. 252 (1977)..................................................................16, 19

*Bangerter v. Orem City Corp.*,
    46 F.3d 1491 (10th Cir. 1995) ...........................................12, 13, 17

*Budnick v. Town of Carefree*,
    518 F.3d 1109 (9th Cir. 2008) .....................................................19

*Caron Foundation of Fla., Inc. v. City of Delray Beach*,
    879 F.Supp.2d 1353 (S.D. Fla. 2012) ..........................................18

*Children's Alliance v. City of Bellevue*,
    950 F. Supp. 1491 (W.D. Wash. 1997) ........................................15

*Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*,
    685 F.3d 917 (10th Cir. 2012) .....................................................12

*Community House, Inc. v. City of Boise*,
    468 F.3d 1118 (9th Cir. 2006) .....................................................13

*Euclid v. Amber Realty Co.*,
    272 U.S. 365 (1926)....................................................................20

*Familystyle of St. Paul, Inc. v. City of St. Paul, Minnesota*,
    923 F.2d 91 (8th Cir. 1991) ...............................................14, 18, 20

*Gamble v. City of Escondido*,
    104 F.3d 300 (9th Cir. 1997) .......................................................12

*Gresham v. Windrush Partners, Ltd.*,
    730 F.2d 1417 (11th Cir. 1984) .....................................................7

*Inland Mediation Bd. v. City of Pomona*,
    158 F. Supp. 2d 1120 (C.D. Cal. 2001) ........................................7

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*,
    284 F.3d 442 (3d Cir. 2002) ...................................................12, 18

*Larkin v. Michigan Dep't of Social Servs.*,
89 F.3d 285 (6th Cir. 1996) ...................................................................15

*Nev. Fair Housing Ctr., Inc. v. Clark County*,
2007 US Dist. Lexis 12800 (DC Nev. 2007.)....................................17

*Oxford House v. City of Virginia Beach*,
825 F. Supp. 1251 (E.D. Vir. 1993).....................................................19

*Oxford House-C v. City of St. Louis*,
77 F.3d 249 (8th Cir. 1996) ........................................................13, 21

*Pacific Shores Properties, LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 436 (2014) .................17

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.
v. U.S. Dep't of Agric.*,
415 F.3d 1078 (9th Cir. 2005) ...............................................................6

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006) ............................................................14

*Smith & Lee Assocs., Inc. v. City of Taylor*,
13 F.3d 920 (6th Cir. 1993) ................................................................21

**State Cases**

*Miller v. Board of Public Works*,
195 Cal. 477 (1925) ..............................................................................20

**Federal Statutes**

42 U.S.C. § 3604(f)(3)(B)........................................................................21

42 U.S.C. § 3613(c)(1)...............................................................................7

Americans with Disabilities Act ..........................................2, 10, 11, 16

Fair Housing Act.....................................................................................19

Fair Housing Amendments Act ..............................................................11

Fair Housing Amendments Act and the Americans with Disabilities
Act............................................................................................................8

**State Statutes**

Cal. Health & Saf. Code § 11834.23 ........................................................10

**Rules**

Fed. R. App. Proc. 8(a)(2)(B)(i) ......................................................4, 7, 8

Fed. R. App. Proc. 27(a)(2)(B)(i) .......................................................4, 8

Fed. R. App. Proc. 8(a)(2)(B)(i) & Fed. R. App. Proc. 27(a)(2)(B)(i).....................7

Fed. Rule 27-3 ..........................................................................1, 4, 5

**Other Authorities**

Costa Mesa Municipal Code § 13-6.........................................................9

Ordinance No. 14-13 ....................................................................4, 9

**INTRODUCTION**

Appellants' motion represents the *fifth* attempt to have an injunction issued, seeking to prevent enforcement of a facially valid zoning ordinance that provides housing opportunities to the disabled and not afforded to the non-disabled. District Court Judge James V. Selna, a subject matter expert in the matters embraced by Appellants' pleadings, denied Appellants' first two attempts as moot, having granted motions to dismiss by Appellee, City of Costa Mesa (City). (ER 4, 9, 14-26). The second denial was with prejudice. (ER 4, 9.)

Having appealed, Appellants then moved for the same relief in this Court pending that appeal—the *third* request for injunctive relief. (ER 376-407). The City successfully opposed Appellants' motion, noting that Appellants failed to seek an injunction pending appeal before the District Court as required by Circuit Rule 27-3. (ER 408-439). Appellants' motion was denied on this procedural ground without prejudice. (ER 440).

Appellants then made their *fourth* request for injunctive relief with the District Court. (ER 441-464). Again, the City the successfully opposed the motion. (ER 465-1204). Judge Selna denied that request **on the merits**, finding it unlikely that Appellants would prevail on any claim, and finding no irreparable harm. (ER 1219-1223).

The District Court concluded—*twice*—that the Ordinance provides "an

additional, beneficial housing opportunity to individuals" in recovery. (ER 1222-1223). The District Court found that, "[w]hen a facially discriminatory housing policy provides a benefit to a protected class, affected plaintiffs cannot succeed on a FHAA or ADA claim based on a disparate treatment theory." (*Ibid.*, citing *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2006).) The District Court also found that the Ordinance, on its face, provided a reasonable accommodation for individuals with disabilities. (*Ibid.*)

Next, the District Court found that Appellants had not shown a likelihood of succeeding on the merits with respect to a reasonable accommodation claim because they had not yet sought such accommodation. (*Ibid.*) Further, the District Court found no likelihood of prevailing on the merits as to an equal protection or substantive due process constitutional claim where "the City has advanced a legitimate governmental interest in zoning its single-family residential neighborhoods to preserve their residential character." (*Ibid.*) The District Court also found Appellants unlikely to succeed on the merits with respect to a preemption claim and a declaratory relief claim. (*Ibid.*) Appellants have no likelihood of success on the merits of any of their claims.

Lastly, the District Court found that Appellants had failed to show irreparable harm. Judge Selna specifically cited to the extended compliance period, the hardship compliance period, and the fact that "merely being required to

relocate" does not constitute irreparable harm. (ER 1222-1223) Accordingly, the District Court found that Appellants had not satisfied the preliminary injunction standard in anyway and denied their motion. (*Ibid.*)

As admitted on the face of the motion currently pending, it is "substantially the same" as the first motion before this Court. (Mot., p. 3.) In fact, even a cursory review of Appellants' prior motions reveals virtually identical arguments and legal assertions, none of which have prevailed. (ER 376-407 [First Urgent Motion for Preliminary Injunction Pending Review, to Ninth Circuit]; ER 441-464 [Urgent Motion for Preliminary Injunction Pending Review, to District Court]). Appellants have provided no new law or facts that would support deviating from the District Court's prior findings and denials. Continuing to recycle prior failed arguments will not somehow create a basis for granting the requested relief when none has ever existed. The *status quo* in this instance is the continued implementation and enforcement of the City's facially valid and beneficial ordinance. Appellants' motion should be denied. Again.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants seek review of an Order of Dismissal issued by the Honorable James V. Selna, District Court Judge of the Central District of California, dismissing Appellants' First Amended Complaint, with prejudice, and denying Appellants' second motion for a preliminary injunction as moot. (ER 1-4; ER 17-

26.) As part of that review, Appellants filed an Urgent Motion for Preliminary Injunction to prohibit the City from implementing and enforcing duly adopted Ordinance No. 14-13. (ER 96-147.) That earlier motion was denied by a motion panel of this Court, without prejudice on technical grounds for failing to comply with Circuit Rule 27-3. (ER 440). The Motion should be denied again, this time on the merits.

First, Appellants have failed to provide "the facts relied on" in support of their reasons for seeking relief, in the form of "affidavits or other sworn statements supporting facts subject to dispute," as well as "relevant parts of the record." Fed. R. App. Proc. 8(a)(2)(B)(i) – (iii). Appellants cite the lower court docket and have not provided any excerpts of the lower court record, much less relevant excerpts. See also Fed. R. App. Proc. 27(a)(2)(B)(i). Appellants provide a declaration of counsel purporting to demonstrate irreparable harm that really only shows speculative harm, harm that could be remedied by compensation, and in any event, the same alleged harm rejected by the District Court. (Decl. of Leonard C. Herr in Support of Second Motion for Preliminary Injunction Pending Review; compare to ER 403-406 [Decl. of Leonard C. Herr in Support of Motion for Preliminary Injunction Pending Review], ER 462-464 [Decl. of Leonard C. Herr in Support of Motion for Preliminary Injunction Pending Review before District Court]).

Second, Appellants' recycled arguments from the prior preliminary

- 4 -

injunction motions yet fail. Appellants have provided no new information and no new law to support imposition of an injunction to prohibit Appellee from continuing to enforce its zoning ordinance that specifically, purposefully, and facially benefits the disabled. That such benefits do not also benefit the business model of Appellants—part of a $35 billion industry[1]—does not provide sufficient reason for this Court to grant Appellants' request. Especially not where every prior request has been denied, including, most recently, on the merits.

## ARGUMENT

## I.  STANDARD ON URGENT MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL.

Appellants have filed an "urgent" motion for preliminary injunction pending appeal. Pursuant to Circuit Rule 27-3, an "urgent" motion seeks action needed "by a specific date or event but not within 21 days." Circuit R. 27-3(b) ["urgent" motion]; compare Circuit R. 27-3(a) ["emergency" motion]. Appellants seek a determination by December 31, 2015. (Mot., p. 3.)

In deciding whether to grant an injunction pending appeal, the Court must "balance[] the plaintiff's likelihood of success against the relative hardship to the

---

[1] In 2008, the U.S. Department of Health and Human Services estimated that by 2014, substance abuse treatment expenditures would reach $35 billion annually. (*Projection of National Expenditures for Mental Health Services and Substance Abuse Treatment 2004-2014*, Katherine R. Levit et al., U.S. Dept. of Health and Human Services, Substance Abuse and Mental Health Services Administration, SAMHSA Publication No. SMA 08-4326, 2008.)

parties." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1092 (9th Cir. 2005), quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (internal quotations omitted). This Court has recognized two different sets of criteria for preliminary injunctive relief: the "traditional test," and the "alternative test." Under the traditional test, the moving party must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). *Id.*, quoting *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005) (quotations omitted). The alternative test requires that the moving party demonstrate, *either* a combination of probable success on the merits and the possibility of irreparable injury, *or* that serious questions are raised and the balance of hardships tips sharply in his favor. *Id.*, quoting *Save Our Sonoran, Inc.*, 408 F.3d at 1120 (quotations omitted). The Court has explained many times: "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id.* at 1092-93, quoting *Save Our Sonoran, Inc.*, supra at 1120.

In the housing discrimination context, where injunctive relief is expressly

authorized by statute, proof that the defendant violated such statute is "sufficient to support an injunction remedying those violations." *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1162 (C.D. Cal. 2001) (internal citations omitted); 42 U.S.C. § 3613(c)(1) (injunctive relief authorized for violations of housing laws). When violation of the housing laws is proved, irreparable injury is presumed. This presumption is rebuttable by "evidence that any injury that may occur is not irreparable." *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423-24 (11th Cir. 1984).

Appellants fail to demonstrate a likelihood of success on the merits at all points on the continuum. The Motion does nothing more than repeat failed arguments. The motion does not articulate why the findings and rulings of the District Court in denying their motion on the merits constitute any error. Further, Appellants have alleged only speculative financial harm as to them, which cannot constitute irreparable harm, as a matter of law.

## II. THE MOTION SHOULD BE DENIED FOR FAILURE TO COMPLY WITH THE FEDERAL RULES OF APPELLATE PROCEDURE.

### A. Appellants Failed to Comply with Rule 8(a)(2)(B)(i) and Rule 27(a)(2)(B)(i).

As a preliminary matter, Appellants again have failed to comply with Rule 8(a)(2)(B)(i), requiring submission and citation to excerpts of the relevant record,

and Rule 27(a)(2)(B)(i), requiring submission of every paper necessary to support the motion.

Rule 8(a)(2)(B)(i) requires that a motion for an injunction before this Court, in addition to all other motion requirements, "must also include: [¶] relevant parts of the record." Appellants have not submitted to this Court any relevant parts of the record, but rather have cited to the District Court docket only. Further, Appellants have not submitted to this Court all papers necessary to support the motion. Fed. R. App. Proc. 27(a)(2)(B)(i). Specifically, Appellants have not submitted their motion for a preliminary injunction pending appeal, filed with the District Court. Appellants assert that this Court should review the District Court's ruling on the motion for preliminary injunction, which was denied on substantive grounds. Appellants' motion below and the Court's Minute Order both are relevant to the resolution of the issues without which the Motion fails.

### III. APPELLANTS' MOTION SHOULD BE DENIED BECAUSE THE ORDINANCE IS VALID ON ITS FACE, AND THEY HAVE NOT SHOWN IMMINENT, IRREPARABLE HARM.

#### A. No Immediate, Irreparable Harm Exists.

Appellants seek urgent relief from this Court, arguing that the Ordinance violates the Fair Housing Amendments Act and the Americans with Disabilities Act. Clearly, the City agrees with the findings and ruling of the District Court. However, even assuming *arguendo* the Ordinance violates applicable statutes, the

City has submitted evidence to rebut the presumption of irreparable harm. The R-1 zone can accommodate 200-250 Sober Living Homes (SLHs), *not* including state licensed facilities and single housekeeping units (ER 436-439). Thus, even if Appellants come into compliance with the Ordinance, at worst they will need to move to a different property. This does not show irreparable harm and the District Court found as much in denying Appellants' fourth motion. (ER 1222-1223).

Additionally, Appellants have until January of 2016 to comply with the Ordinance, or until January 2017 if they claim financial hardship. (*Ibid.*; see also ER 1135-1137) There is no urgency.

### B. Appellants Are Not Likely to Prevail on the Merits as the Ordinance is Valid on its Face.

#### 1. The Ordinance

On November 20, 2014, Ordinance No. 14-13 became effective. The Ordinance amended the relevant definitions in Section 13-6 of the Costa Mesa Municipal Code (CMMC), and added Chapter VX (Group Homes) to Title 13 (Planning, Zoning and Development) of the CMMC. (ER 96-113). Specifically, the Ordinance regulates group homes within R-1 zones (single-family residential), while imposing no limitations on residential care facilities of six or fewer, nor on any single housekeeping units. (ER 102-108.) The Ordinance provides a right of access to the R-1 zones for disabled individuals living in a boardinghouse-style facility that is not available under any circumstances to the non-disabled, following

issuance of a ministerial use permit. (ER 104-108.)

To the extent permissible,[2] the Ordinance attempts to address an issue that is particular to the City of Costa Mesa: overconcentration of state licensed drug and alcohol treatment facilities (which fall under the definition of "residential care facilities,") and SLHs in R-1 zones. At the date of adoption of the Ordinance, the City already was home to at least 40 state licensed drug and alcohol treatment facilities and 94 sober living homes. (ER 98; see also ER 38.) As of June 10, 2015, the City had confirmed the existence of 74 sober living environments in the R-1 zone alone. (ER 1137).

The City has an exceedingly high and disproportionate share of licensed homes: Costa Mesa has *3.6%* of the population of Orange County, but houses *26%* of the licensed home resident capacity in Orange County. (ER 37, 41, 206-302.) Some city blocks in the R-1 zones have clusters of SLHs. (ER 38) Mindful of the rights conferred by federal and state fair housing laws and the Americans with Disabilities Act, the City crafted an ordinance that balances its legitimate interest in preserving the character of single-family neighborhoods with the rights of the disabled by allowing group homes and SLHs. (ER 116-118.).

Appellants' own papers before the District Court attest to this very issue: they assert that they run 12 facilities to which the Ordinance applies, and 8 of those

---

[2] State licensed residential drug and alcohol facilities of six or fewer must be treated like a family use, and cannot be included in the definition of boardinghouse or any other residential facility that implies that the group home is a business run for profit. Cal. Health & Saf. Code § 11834.23.

facilities are all within 650 feet of each other in R-1 zones, and possibly within 650 feet of a number of other facilities. Appellants further assert that they know of at least five other licensed and unlicensed facilities, not operated by Appellants, within 650 feet of one of Appellants' facilities. (ER 89 at ¶¶ 11, 13.). The overconcentration issue is clear.

The impact of the increasing numbers of SLHs has much less to do with the fact that the disabled live in such homes, and much more to do with the fact that many of these operator-run, boardinghouse-style facilities house larger numbers of adults than the average household, and house residents who are transient to the City and neighborhood, and thereby affect the neighborhood's character. Additionally, clustering of such facilities has a tendency to lead to the institutionalization of the neighborhoods in which they are located, which is counterproductive for successful recovery.

### 2. The Fair Housing Amendments Act

The City has always acknowledged that individuals in recovery from alcohol or drug abuse are considered "disabled" for purposes of federal law, and as such they enjoy special protections under the FHAA and the ADA. In light of these policy concerns, courts construe the FHAA to "prohibit[] local governments from applying land use regulations in a manner that will *exclude people with disabilities entirely* from zoning neighborhoods, particularly residential neighborhoods, or that

will give people with disabilities *less opportunity* to live in certain neighborhoods than people without disabilities." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 459-60 (3d Cir. 2002) (emphasis added); cf., *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012) ("[t]he law requires accommodations overcoming barriers, imposed by the disability, that prevent the disabled from obtaining a housing opportunity others can access. But when there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense").

Zoning decisions and ordinances can violate the rights of persons with disabilities under the FHAA under any of three possible theories: disparate treatment, disparate impact, and failure to provide reasonable accommodation. *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997). Appellants have not provided the Court with any evidence or legal authority that demonstrates a likelihood of prevailing on any of these legal theories.

### a. Disparate treatment

An Ordinance that treats the disabled differently on its face is discriminatory; the only issue for the court to decide is whether the discrimination is legal or illegal. *Bangerter v. Orem City Corp.*, 46 F.3d 1491 (10th Cir. 1995). Under the FHAA, an ordinance that treats housing for the disabled differently on

its face will withstand challenge if the city can show either (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes. *Community House, Inc. v. City of Boise*, 468 F.3d 1118, 1125 (9th Cir. 2006).

An ordinance that is beneficial to the disabled will not be found to violate fair housing laws. *Community House, Inc. v. City of Boise*, 468 F.3d at 1125; see also, Oxford House-C v. City of St. Louis, 77 F.3d 249, 253 (8th Cir. 1996) (city ordinance defined permissible single-family dwellings as including eight or fewer unrelated disabled individuals, but prohibited more than three unrelated non-disabled individuals from living together – held that ordinance does not discriminate against the disabled, but rather favors them on its face). Restrictions that benefit the disabled are acceptable if the benefits clearly outweigh the burdens, and they must further a *bona fide* interest in theory and in practice, and no alternative would further that interest with less discriminatory effect. Bangerter, 46 F.3d at 1504-05.

The Ordinance's differential treatment of the disabled is permissible because it benefits the handicapped by providing a type of housing in the R-11 zone that is not available to the non-disabled. Prohibition of boardinghouses outright does not constitute over-discrimination; it is consistent with the desire to curtail boardinghouse-style living in the R-1 zone.

The City of Costa Mesa's permit requirements are straight-forward, ministerial, and simple. The group home must provide basic identifying information and copies of its operating policies. If the applicant meets the requirements of the Ordinance, it obtains a permit. No public hearing is required and the permit faces no public scrutiny. Such a process will not prohibit new homes from coming into the City and, to the extent that some homes may need to move, a lengthy compliance period is provided. Relocation, by itself, does not rise to the level of a fair housing laws violation. *See Familystyle of St. Paul, Inc. v. City of St. Paul, Minnesota*, 923 F.2d 91, 93-94 (8th Cir. 1991) (dispersal requirements will not be held invalid under the fair housing laws merely because they limit housing for the disabled); (see also ER X.)

Appellants attempt to make much of the fact that the permit application materials contain guidelines that are not included in the Ordinance. (Mot, pp. 11-15.) However, issuing administrative guidelines to assist the public in complying with its codes, and drafting application materials without public input is commonplace for public entities in general, and for the City of Costa Mesa in particular. See, *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022 (9th Cir. 2006) (for the proposition that cities can, and do, promulgate administrative guidelines to assist citizens to comply with applicable local laws); (ER 27-32).

Adopting regulations to address clustering and overconcentration is impermissible until a city has actual evidence of clustering and overconcentration, i.e., a *bona fide* interest in theory and in practice. See, e.g., *Larkin v. Michigan Dep't of Social Servs.*, 89 F.3d 285 (6th Cir. 1996) (striking down a 1500' separation requirement between adult foster care facilities; city provided no evidence of tendency to cluster); see also *Children's Alliance v. City of Bellevue*, 950 F. Supp. 1491 (W.D. Wash. 1997). The City demonstrably has a *bona fide* interest in theory and in practice: overconcentration and clustering of sober residential environments is, in fact, occurring in the City.

Appellants misunderstand the significance of the over-discrimination analysis. Over-discrimination does not give rise to a separate claim and is not a separate theory of liability; it is an analytical construct that makes sense in the context of a facially neutral ordinance. In a bit of tortured logic, Appellants appear to argue that the Ordinance classifies group homes as boardinghouses, and that because grandfathered boardinghouses are not subject to the same regulations as group homes, existing group homes are now restricted more than the existing boardinghouses, and thus are being treated worse than boardinghouses. (Mot., pp. 5-7.) However, it is only Appellants who believe group homes to be the same as boardinghouses. The fact that they provide boardinghouse-style living, i.e., the operator decides who moves in and charges each resident individually, does not

make group homes the same as boardinghouses. The purpose of group homes is to provide supportive housing for the disabled; in the case of sober living, the purpose is to provide a living environment that increases the chances that individuals will succeed in recovery. The Ordinance clearly distinguishes between boardinghouses and group homes, prohibiting the former and allowing the latter. Furthermore, the City does not treat, nor has it ever treated, group homes like it treats boardinghouses, which consistently have been restricted to a greater extent in the R-1 zone than group homes. (ER 311, 329.) Prior to the enactment of the Ordinance, only small boardinghouses (three or fewer boarders) were permitted in the R-1 zone, whereas licensed and unlicensed group homes (formerly "residential care facilities" and "residential services facilities") could house up to six individuals in the same zone. The balance has always been, and continues to be, in favor of housing for the disabled.

Appellants' disparate treatment claims fail also under the *Arlington Heights* factors analytical framework. When challenging the validity of a facially neutral ordinance, a plaintiff can establish a prima facie case of disparate treatment under FHA and ADA by relying on direct or circumstantial evidence of discrimination, and the "multi-factor inquiry" articulated in *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252 (1977). Over-discrimination justifies the alternative to the *McDonnell Douglas* construct that a plaintiff establish that a similarly situated

entity is treated better than plaintiff. See *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 436 (2014) ("*Pacific Shores*");

Pacific Shores* is distinguishable. There, the Court of Appeals had to decide if the plaintiffs had created a triable issue of material fact over the intent in adopting a facially neutral ordinance. The Court objected to what it perceived as an attempt to insulate impermissible restrictions on housing for the disabled by creating a facially neutral ordinance that, because of that neutrality, would necessarily impose restrictions on some persons who are not part of the class of people that the ordinance was intended to affect. *Pacific Shores*, 730 F.3d at 1159-62. Newport Beach could not get around the spirit of the law by adopting an ordinance that, on its face, did not appear to target individuals in recovery but that, in light of all the facts and history surrounding the adoption, was actually intended to do so.

The City's intent to treat group homes differently is articulated expressly on the face of the Ordinance, and the City has never asserted otherwise. When analyzing the validity of a facially discriminatory ordinance, [t]here is no need to probe for a potentially discriminatory motive circumstantially...." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 fn.16 and 17 (10th Cir. 1995); see also, *Nev. Fair Housing Ctr., Inc. v. Clark County*, 2007 US Dist. Lexis 12800, *1, 22 (DC

Nev. 2007.) Thus, Appellants' attempts at divining the City's intent by citing to statements made by City officials or the permit application, are irrelevant.

As City has acknowledged, the law prevents the City from adopting regulations that seek to address overconcentration or clustering without evidence of such a phenomenon occurring. Appellants essentially argue that the City cannot adopt regulations to address this issue even when it becomes a documented reality, as is the case in Costa Mesa, because any regulation that imposes restrictions on the housing for the disabled, no matter what the reason, is impermissible. Case law provides that this is not the intent of the fair housing laws. See *Caron Foundation of Fla., Inc. v. City of Delray Beach*, 879 F.Supp.2d 1353, 1364 (S.D. Fla. 2012), *citing Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 603 (4th Cir. 1997); see also, *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 459-60 (3d Cir. 2002) (courts construe the FHAA to "prohibit[] local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give people with disabilities less opportunity to live in certain neighborhoods than people without disabilities.") As the Eighth Circuit pointed out, "the goals of non-discrimination and deinstitutionalization [are not] incompatible." *Familystyle v. City of St. Paul*, 923 F.2d at 93-94.

Appellants further argue that the Ordinance violates the FHAA because it

does not serve legitimate safety concerns. (Mot. at pp. 7-9, 10-11.) However, the City's Ordinance survives *either* if it benefits the disabled *or* if it addresses legitimate safety concerns of the people affected. The City does not argue here, nor has it argued below, that the Ordinance is justified by safety concerns.

Even if the Court deemed the *Arlington Heights* factors the applicable framework to analyze the Ordinance, Appellants also fail to demonstrate a fair housing violation. A disparate treatment claim under the FHAA may also be established if there is "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision." *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008). A plaintiff need not allege malice or discriminatory animus to make a *prima facie* claim of discriminatory treatment. Once the plaintiff makes a showing of discriminatory intent, the burden shifts to the city to demonstrate a "legitimate, non-discriminatory reason" for its regulation. *Budnick*, 518 F.3d at 1114. If the municipality carries its burden, then plaintiff must produce evidence to suggest that the challenged action "was due in part or whole to discriminatory intent." *Id.* (internal citations omitted.)

The Fair Housing Act, however, does not "insulate [residents of SLHs] from legitimate inquiries designed to enable local authorities to make informed decisions on zoning issues." *Oxford House v. City of Virginia Beach*, 825 F. Supp. 1251, 1262 (E.D. Vir. 1993). The City's interest in preserving the character of

- 19 -

single family neighborhoods is a legitimate goal, one that has long been recognized by both state and federal courts. As early as 1926, the United States Supreme Court acknowledged the legitimacy of "what is really the crux of the more recent zoning legislation, namely, the creation and maintenance of residential districts, from which business and trade of every sort, including hotels and apartment houses, are excluded." *Euclid v. Amber Realty Co.*, 272 U.S. 365, 390 (1926); see also, *Miller v. Board of Public Works*, 195 Cal. 477, 490, 492-93 (1925); City of Costa Mesa 2000 General Plan, Housing Element, p. LU-24. (ER 149, 172.)

The use limitation at issue has as its core purpose the maintenance of the single-family character of R-1 neighborhoods, where the average household size is 2.74. (ER 172.) In light of the disproportionate number and increasing concentration of SLHs in the City of Costa Mesa, and the impacts that transient residents have on such neighborhoods, the City enacted the Ordinance to maintain the character of its single family residential neighborhoods, while also ensuring the disabled a greater opportunity to the use and enjoyment of the housing of their choice than is available to the non-disabled. A related goal is to ensure that neighborhoods do not achieve the kind of concentration of SLHs that transforms such neighborhoods into institutions, the very type of environment that is counterproductive to recovery and that led to the adoption of the fair housing laws in the first place. See *Familystyle of St. Paul, Inc. v. City of St. Paul, Minnesota*,

923 F.2d 91 (8th Cir. 1991).

Finally, Appellants' arguments that the Ordinance's intent was to "shut down a bunch of sober living homes" and to "make it near impossible to open a new one," (Mot. p. 2), is unsupported by an evidence, much less admissible evidence. The intent of the Ordinance was, manifestly, not to eliminate SLHs or group homes, and Appellants have provided no evidence that the Ordinance will have any effect on existing SLHs other than cause them to move to a new location. In fact, based on the 65-foot separation requirement, the City estimates that as many as 200-250 SLHs can locate in the R-1 zone. (ER 436-439)

### b. Reasonable accommodation

A municipality commits discrimination under the FHAA if it refuses "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [persons with disabilities] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHAA "requires the City to make reasonable accommodations in its generally applicable zoning ordinances when necessary to give a handicapped person 'equal opportunity to use and enjoy a dwelling.'" *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251 (8th Cir. 1996); 42 U.S.C. § 3604(f)(3)(B); *Smith & Lee Assocs., Inc. v. City of Taylor*, 13 F.3d 920, 924 (6th Cir. 1993).

The Ordinance complies with these requirements. The reasonable

accommodation is provided by allowing housing options in the R-1 zone that are not available to the non-disabled, as previously shown. The Ordinance also expanded the reasonable accommodations procedures in the Zoning Code, so that individual facilities can seek relief from the application of the provisions of the Ordinance. (ER 109-113.)

Appellants' assertion that the City would never grant relief from the separation requirement under any circumstances is simply inaccurate. (ER 75-76.) Appellants have asserted futility based on a misrepresentation of the City's position, and have provided no evidence of such an assertion.

## CONCLUSION

For the reasons outlined herein, Appellee City of Costa Mesa respectfully requests that this Court deny Appellants' latest urgent motion for preliminary injunction pending appeal.

Dated: October 5, 2015            JONES & MAYER


                                  */s/ G. Ross Trindle, III*
                                  James Touchstone
                                  Tarquin Preziozi
                                  G. Ross Trindle, III
                                  Attorneys for Petitioner,
                                  City of Costa Mesa

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 5, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ *Wendy A. Gardea* _____
WENDY A. GARDEA