NO. 15-55779

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

**SOLID LANDINGS BEHAVIORAL HEALTH, INC.; SURE HAVEN in its own name and dba SOLID ROCK RECOVERY; FPS LLC; STEPHEN FENNELLY; ELIZABETH PERRY; AND JOHN DOE,**

*Plaintiffs and Appellants*

v.

**CITY OF COSTA MESA,**

*Defendant and Appellee*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(8:14-CV-01838-JVS-JCG)

_____

REPLY BRIEF ON SECOND MOTION FOR PRELIMINARY
INJUNCTION PENDING REVIEW [FRAP 8]

Urgent Motion - Relief required before November 20, 2015

_____

Leonard C. Herr, #081896
Ron Statler, #234177
HERR PEDERSEN & BERGLUND LLP
100 Willow Plaza, Suite 300
Visalia, California 93291
Tel.:(559) 636-0200
Fax: (559) 636-9759
Attorney for Plaintiffs/Appellants

The City of Costa Mesa is asking this Court to believe that they are benefitting a protected class of people – persons recovering from drug and alcohol addiction – by forcing them out of their nicest neighborhoods. Some homes get to stay, but the City is forcing the rest to stop servicing the disabled.

Seriously; that is the "benefit": some of you get to stay, but the rest have to leave because there are simply too many of you and those like you in Costa Mesa.

The disparate treatment is obvious.

# I.

## SOLID LANDINGS HAS SHOWN A PROBABILITY OF PREVAILING AND HAS SHOWN THE IRREPARABILITY OF HARM

The Ordinance that is challenged here violates the Fair Housing Act Amendments and the Americans with Disabilities Act in a simple, straightforward way. There are people who are disabled who will not be allowed to live where they currently live. The City knows sober living homes will shut down because of this ordinance. People will have to move out of their homes because they live in homes designed for a class of protected persons. This is being done by the imposition of permitting rules that require applications for special use permits and reasonable accommodations. The threatened harm is clear and uniquely irreparable.

///

### A. Solid Landings has shown a probability of prevailing: The City is subjecting sober living homes to different rules than other homes in R1 neighborhoods because they service a protected class of persons.

City has never disputed that persons in recovery are protected persons under the FHAA and the ADA; nor has City ever questioned that Solid Landings is a proper plaintiff in this action as an entity serving these persons. Prior to this Ordinance, sober living homes with six or fewer persons living in them operated freely in Costa Mesa. After passage of the Ordinance, sober living homes, like the ones operated by Solid Landings, are subject to a special use permit and registration regime. They are subject to this regime because they are sober living homes that cater to persons in recovery from drug and alcohol addiction.

This court has already held that subjecting a protected entity to a permit or registration requirement for a discriminatory purpose, "has obvious adverse impacts upon that entity, and being forced to submit to such a regime is sufficient to establish injury in a disparate treatment claim. [] This would be true even if such permits were granted freely …." *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1165 (9th Cir. 2013) cert. denied sub nom. *City of Newport Beach, Cal. v. Pacific Shores Properties, LLC*, 135 S.Ct. 436 [190 L.Ed.2d 328] (2014), omitted, bracketed citation was to *Florez v. Pierce*, 617 F.2d 1386, 1391 (9th Cir. 1980), cert. denied 449 U.S. 875.

It remains to be seen if the permits will be given freely – but that is not relevant to the disparate treatment claim. Here, the City of Costa Mesa is forcing sober living home operators to undergo a permitting regime because they service persons in recovery from addiction. The permitting process determines whether they get to open – indeed determines whether homes that have operated for years get to stay open – because the Ordinance says disabled people who need sober living services cannot live too close to one another. Solid Landings is a protected entity that is forced into a permitting regime for a discriminatory purpose under *Pacific Shores*. This satisfies 42 U.S.C. 3601, et seq. and *Pacific Shores*. The City is treating a class of disabled persons differently from other persons who are not disabled or suffer some other disability. For this simple reason, and for all others in the moving brief, the probability of prevailing is established.

### B. City's claim of overconcentration and clustering misreads the case law allowing limitations on it.

City argues that, under *Larkin v. Michigan Dep't of Social Services*, it can limit the clustering or overconcentration of sober living homes. 89 F.3d 285 (6th Cir. 1996). City misreads the holding; the *Larkin* Court did not approve a state law that prevented overconcentration or clustering of group homes; it struck down a state law that forced group homes to be a minimum number of feet apart. *Id.* at 291. The *Larkin* Court held that laws cannot be used to tell disabled persons they cannot live too close to one another. *Ibid.* While the *Larkin* Court noted that the Defendant

3

state could prevent forced segregation or clustering with a given law, that was a different issue from whether it could prohibit persons in a protected class from living too close to one another: that, the Court held, is prohibited. *Ibid.*

The *Larkin* Court made it clear. Laws cannot be passed to force integration of the disabled [i.e., minimum distances between their homes] – integrating laws can only be used to counter some other law that forces clustering or segregation. In the absence of some force, a cluster of disabled persons, "is as the result of the free choice of the disabled." 89 F.3d at 291. The *Larkin* Court recognized that such rules serve only "the paternalistic idea that it [the Government] knows best where the disabled should choose to live." *Ibid.* And that is prohibited.

The City contends that it is battling the scourge of "overconcentration." In truth, the City is, at best, telling the disabled that it, not they, know best where they should live. And the City has made it clear; the City does not believe too many recovering addicts should live in their R1, single-family neighborhoods.

### C. City's argument that sober living homes can seek reasonable accommodation from the Ordinance is illusory.

While an application for a reasonable accommodation can be made, no reasonable accommodation is actually available. City has made clear: a sober living home that is less than 650 feet from another location that offers addiction services, be it another sober living home or some other type of facility, will have to shut down. This is central to the City's effort to prevent so-called "clustering," and any sober

4

living home that is within 650 feet of another but does not prevail in the race to City Hall to apply for a special use permit will have to close. Apparently, a request for an exception can be made, but there is no way to tell how any given sober living home might qualify for a "reasonable accommodation."

But necessity must be shown, and that necessity must be shown: "not to just a particular facility, but as to facilities of that type in general…. [T]hey would have to demonstrate it as to all those types of homes in the City or in the R1 zone in this case." [Ford Decl., Exh. 4, p. 75, Doc. No. 44-6.] City fails to explain how a reasonable accommodation can be made without essentially rescinding the entire minimum set-back rule. That is because it cannot.

That is because City is not offering reasonable accommodations, which are modifications to "rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling…." 42 U.S.C. § 3604(f)(3)(B). A reasonable accommodation, in other words, is a modification that would have to be made for all sober living homes that are in Costa Mesa's R1 zones. If City is going to make such a modification for one home, it is difficult to see how it cannot be made for all. The promise of fairly-considered applications for a reasonable accommodation is either pyrrhic or a callous effort to divide the sober living home industry.

5

**D. Solid Landings has shown irreparable harm: It was factually shown in the moving papers and is presumed with establishment of the violation.**

Where discrimination under the FHAA is shown, irreparable injury may be presumed. *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 200 (5th Cir., 2000) That is the case here, but more has been shown in the motion as well, where Solid Landings showed actual irreparable injury: homes close, interrupting the smooth transition of persons who are in recovery but are no longer involved in supervised recovery, introducing chaos into the life of the recovering addict which significantly increases the likelihood of relapse and more likely than not will force some onto the street.

The City's contempt for the disabled is so great they were apparently compelled to include it in their brief: in the opposition, City mocks claims of irreparable harm to persons in recovery based on a federal study indicating a 35 billion dollar industry servicing them. Please see, Opposition, p. 5, fn. 1. Solid Landings has never claimed the ordinance threatens nation-wide collapse of businesses running sober living homes. It claims an undisputed fact: people with a disability are going to be kicked out of their homes because those homes cater to people with that disability.

Irreparable harm has been shown, both by proper presumptions and by factual showings. The motion should be granted.

6

## II.

## THE MOTION'S CITATIONS PROPERLY CITE TO THE DISTRICT COURT, AS IS RECOMMENDED ON THIS COURT'S OWN WEBSITE BY ATTORNEYS PRACTICING BEFORE THIS COURT

City suggests that the motion for preliminary injunction should be denied because Solid Landings cited to the district court's docket; but citing to the district court's docket is part of ordinary practice. While City is correct in saying that motions before this Court must include accompanying documents, those accompanying documents are appropriately cited to the district court's docket if they appear as part of it.

Under FRAP 27, a request for an order in the circuit court generally must be made by motion. While declarations and papers necessary to support the motion must be served and filed with it, the Ninth Circuit Appellate Lawyer Representatives discourage practitioners from attaching "irrelevant or unnecessary documents" to a motion with this reminder: "Remember that the clerks and the Court have access to the district court docket." Please see, The Appellate Lawyers Representatives' Guide to Practice in the United States Court of Appeals for the Ninth Circuit, § VII.I.E.3, p. 38 (Aug. 24, 2014). While this admonition is from an informal guidebook, it is soundly-reasoned and is made available on this Court's website at: http://cdn.ca9.uscourts.gov/datastore/general/2015/05/06/Final_2014_ALR_ Practice_Guide_82514.pdf

Assuming the documents cited in the motion are relevant [and City does not appear to argue against the documents' relevance], attaching hard copies appears to be "unnecessary," because the Clerks and the Court already have access to them. It goes without saying the practice of law creates paper. The Representatives suggest that, when citing to "accompanying documents," "either attach the pertinent documents as exhibits or refer the reader to the district court docket." Practice Guide, § VII.I.D.2, p. 37. Solid Landings chose the latter; were those documents not part of the docket, they would have been attached. That might have been the case if this were an "emergency motion" that needed to be decided within a few days of the filing of the notice of appeal, in which case the docket may be a bit inconvenient for this Court to access, but that is decidedly not the case. There is time for the docket to be made available for a decision on this motion and, if there is some trouble accessing it, Solid Landings will happily supplement with no argument, merely documents, if the Court asks. The Paper Chase need not escalate from the pursuit of justice to a war on trees when technology and ordinary practice allow for other, less hostile options.

### III.

### CONCLUSION

Solid Landings has shown a probability of prevailing. It has shown, both factually and by proper presumptions of law, irreparable injury. The City of Costa

8

Mesa has violated anti-discrimination statutes by passing a law that subjects a protected class of persons to rules that are different from the rules placed on others. City does not dispute this. Instead, City ignores case law rejecting over-concentration and clustering as excuses for discrimination, and uses those rejected terms as buzz-words to frighten neighborhoods. The Law should not be driven by soundbites. As was held in *Larkin*, federal law allows persons who require group home living to live where they choose, and to do so even in Costa Mesa's nicest neighborhoods. The Fair Housing Act does not allow the City to remove the disabled from their homes because too many live in a given area; it prohibits the passage of laws that mandate over-concentration and clustering. The City has it backwards, and will force disabled persons from their homes once the ordinance becomes effective for no reason other than the fact of their disability. The motion should be granted.

Dated: October 12, 2015      Respectfully submitted,

HERR PEDERSEN & BERGLUND LLP

By: /s/ Leonard C. Herr
    LEONARD C. HERR
    Attorneys for Plaintiffs/Appellants

9

## **CERTIFICATE OF COMPLIANCE**

Pursuant to C.R. 32(a)(5)(6) the undersigned certifies that the brief is proportionately spaced and has a typeface of 14 points or more and has 2120 words. The brief does not exceed the 10 page limit.

Dated: October 12, 2015  Respectfully submitted,

HERR PEDERSEN & BERGLUND LLP

By: /s/ Leonard C. Herr
  LEONARD C. HERR
  Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2015, I electronically filed the foregoing Reply Brief on Second Motion for Preliminary Injunction Pending Review [FRAP 8] with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 12th day of October, 2015 at Visalia, California

Rose Ochoa